[No. 1710.]

ASTE v. WILSON ET AL.

1. MECHANICS' LIENS—WAIVER OF—CONTRACTS.

A building contract providing that the contractors would not suffer or permit any liens or claims for work, labor or material to be set up or asserted by any subcontractor or laborer, and that if any was set up or asserted would cause the same to be satisfied and canceled of record, and providing further that fifteen per cent of the contract price should be held by the owner as security for the faithful performance of the work, to be applied to paying any damage under the contract and in furnishing to the owner releases from any liens, did not waive the right of the contractors to file a mechanic's lien, nor did it prevent any subcontractor, material man or laborer furnishing work or material under such contract from asserting their statutory right of lien. Nor would the fact that the same covenant against permitting liens was repeated in subsequent contracts between the contractor and subcontractors give it any greater or added force.

2. SAME.

Clauses of contracts purporting to prohibit the contractor from asserting a statutory right of lien should be strictly construed, and if language be used of doubtful import, it should be construed in favor of the lien, and this rule applies with greater force where the contract of the original contractor is invoked to cut off the lien rights of subcontractors, laborers or material men who were not parties to it.

3. SAME—STATUTES.

Contracts are subject to the statutes of the jurisdiction in which they are made and are to be performed, and such statutes so far as applicable, enter into and form part of the contract. Where the owner by contract is to retain fifteen per cent of amount to be paid upon a building contract to secure the release of liens, it will be conclusively presumed that he was to retain the amount for the period of thirty-five days, the period provided by statute that the owner should withhold such percentage, and he cannot rely upon a provision in the contract whereby the contractor covenants against such liens to justify him in paying over said percentage before the expiration of the statutory time, and thus avoid the lien.

*Appeal from the District Court of Arapahoe County.*

Mr. S. L. CARPENTER, for appellant.

Mr. F. A. WILLIAMS, for appellee.

WILSON, J.

This is an action to enforce mechanics' liens. Aste, the owner, entered into a written contract with Elrod & Burnett, general contractors, whereby the latter agreed to provide the material and labor and erect for him a six-room terrace on certain lots owned by him for a certain aggregate sum to be paid partly in installments during the progress of the work, and the entire contract price after its completion. Among other stipulations in the contract was the following:

"And the first parties covenant and agree that they will not suffer or permit any one or more liens or claims for work, labor or material to be pleaded, set up or asserted, by any person claiming to be a subcontractor, laborer (or otherwise)

under them, the first parties, or, if any are set up, asserted or pleaded, will cause the same to be satisfied and canceled of record."

Also the following covenant:

"It is agreed by the parties that fifteen per cent of the contract price shall be held by the owner as part security for the faithful performance of the work, and may be applied under the direction of the supervising architects in the liquidation of any damage under this contract; also furnishing to the owner a release from any liens or right of lien when requested."

Thereafter, and upon the same day, the plaintiffs, as subcontractors, entered into a contract in writing with Elrod & Burnett, whereby the former agreed to do all of the brick and stone work, and furnish all material, labor and scaffolding necessary in the erection of said building. This contract also contained a covenant in the same language as that which we have first quoted. Upon the back of this contract was a written guaranty signed by defendant John A. Keefe and A. J. Schulte, in which they guaranteed " to said Elrod & Burnett the full and faithful performance by the said Wilson & Morris of the aforesaid contract on their part in every particular." About the same date, Elrod & Burnett entered into a written contract with one Timothy Ryan, whereby the latter agreed to make the necessary excavation for said building. This contract also contained a stipulation by Ryan against liens and claims, in the same language as those to which we have referred. Defendant Baldwin claims a lien by virtue of employment by said Ryan in this work of excavation, and also as assignee of the claims of several other laborers engaged with him in the same employment. Appellee Keefe furnished the brick for the building under agreement with the plaintiffs, and for this he claims a lien. The decree was in favor of the lien claimants, who are the appellees here, and from this Aste, the owner of the property, appeals.

The principal contention of his counsel, upon which he relies to defeat all of the liens, is that the several claims of

subcontractors, laborers and material men rest upon the original contract between Aste, the owner, and Elrod & Burnett, the general contractors, and that all such persons are presumed to have notice of the existence of such contract, a general knowledge of its terms, and the rights and obligations of the parties thereto, and to have taken subcontracts, contributed labor and materials in furtherance of the work in strict subordination to such terms; and that the general contractors, having covenanted with the owner that they would not suffer or permit any liens or claims to be pleaded, set up or asserted by any subcontractor or laborer under them, the latter are thereby estopped from so doing.

That a contractor, subcontractor, material man or laborer may himself, by contract, waive his statutory right to a lien, seems to be true both upon reason and authority. With reference to the broad doctrine asserted by counsel, that in all cases, regardless of the provisions of the statutes of the state in which the contracts are executed, the original contractor may by a contract, to which he and the owner alone are parties, waive or destroy the statutory right to a lien of others, not parties to the contract, who may do work upon or furnish materials for the structure, it is not conclusively established by the authorities, nor is the reasoning by which it is supported entirely clear and convincing. Apparently, however, he is not without very respectable authority in support of it. It seems to be the established rule in one state (Pennsylvania), the decisions of whose supreme court are entitled usually to much weight and consideration. Without making a long list of citations, we refer only to the two leading cases in which references are made to a number of others supporting the same contention. *Schroeder v. Galland et al.*, 134 Pa. St. 277; *Morris v. Ross et al.*, 184 Pa. St. 241.

The reasoning of the court in announcing this rule was substantially, that the subcontractor and laborer deriving their rights to a lien solely through the original contractor, they cannot have the benefits of the builder's contract without accepting the conditions upon which those benefits are

conferred, they being to the extent of their undertaking bound to do just what their principal was bound to do, they must perform it, of course, according to the express limitations in his contract.

Mechanic's lien laws are wholly creatures of statute, and it is safe to say that in all of the states they differ in many respects more or less materially. It is unsafe, therefore, to rely wholly upon the authority from another state announcing a principle applicable to a lien law, however general the principle may seem to be in its application, unless we are advised as to the particular provisions of the entire statute in that state. We are not advised as to what the lien law in Pennsylvania is or was. It is true that the broad principle enunciated by the courts in that state would seem to be applicable to lien laws generally. It is possible, however, that there might have been some special statutory provision in that state which materially affected or controlled the decisions on this point. We are not advised, and this is a most important consideration, whether under the statute then in force in that state, the lien of a subcontractor, material man or laborer was in terms made direct and not dependent on the contract of the owner with the principal contractor; or whether it was indirect and wholly dependent upon such contract. It is strenuously insisted, and with much force, that the lien statute in this state now in force, and under which this suit arose, gives a direct lien to such persons (Laws, 1893, p. 315). We simply suggest this, without intending to decide it, because it is not necessary to the determination of this case.

We have also been referred to a case in California, which seems to be in line with the Pennsylvania authorities—*Bowen v. Aubrey*, 22 Cal. 566. In that case it was held that the subcontractor knew that there was a contract between the owner and the general contractors, and this was sufficient to put him upon inquiry, and he was to be considered as affected with notice of the contents and stipulations of this contract. In that case, also, the original contractor had expressly by

his contract waived his own right to file a lien, and the court said that the subcontractor had no higher rights than the original contractor. How far these considerations affected the decision does not appear.

In a subsequent case, *Dore v. Sellers*, 27 Cal. 594, the court, speaking of the right which the employees of a contractor have to assert a lien under the statute, said, that they had the right,—not for the reason that the employer's property had been benefited by the labor or materials furnished by the employees, but because they had furnished the labor or materials for the contractor to whom the law had granted a lien for the amount which became due to him under the contract in consequence of their labor and materials. It would seem, therefore, that under the statute of that state, as construed by the supreme court, that the lien of a subcontractor or other employee was not direct, but depended upon the contract of the owner with the principal contractor.

In 19 American State Reports, p. 699, Mr. Freeman, the distinguished editor, in speaking of the case of *Bowen v. Aubrey*, *supra*, says:

"This case was decided in 1863 under the California mechanic's lien law of April 19, 1856, as amended by the act of April 22, 1858. It has been cited in several subsequent cases in California on other points, but not upon the question under consideration. The decision of that case seems to have been overruled in the later case of *Whittier v. Wilbur*, 48 Cal. 175."

The question under consideration, to which Mr. Freeman refers, was the effect of an agreement by the principal contractor in a contract with the owner that he would not suffer or permit any lien to be put on the structure. Against the doctrine announced by the Pennsylvania courts there is also a respectable array of authority. *Norton v. Clark*, 85 Me. 359; *Miles v. Coutts*, 20 Mon. 47; *Clough v. McDonald*, 18 Kan. 114.

In the first cited case, the court in construing a stipulation in a building contract with the original contractor that no lien should exist or be claimed for any labor or materials furnished by him or any others employed by him, said:

"This particular stipulation, like all other stipulations, binds only those who made it or assented to it."

We have no direct adjudications in this state upon this mooted question, but our supreme court, after referring to the authorities which have been cited above from Pennsylvania and California in support of this doctrine, intimates quite strongly that there may be serious doubt as to its soundness in this jurisdiction. In *Jarvis v. State Bank*, 22 Colo. 316, the court says:

"Under the lien law of this state, which, as it is claimed, gives to a subcontractor an independent and distinct lien irrespective of the right of the contractor thereto,—being as it is argued a creature of the statute and not of contract,— there may be a question whether or not a contractor may, merely by his contract with the owner waiving his right to a lien, cut off the right of a subcontractor thereto. There are decisions holding—at least intimating—that the statutory rights of a subcontractor cannot thus be destroyed. *Clough v. McDonald*, 18 Kan. 114; *Chicago Lumber Co. v. Woodside*, 71 Ia. 359; *Lonkey v. Cook*, 15 Nev. 58; *Gull River L. Co. v. Keefe*, 41 N. W. Rep. 743; *Albright v. Smith*, 51 N. W. Rep. 590; *Laird v. Moonan*, 32 Minn. 358; *Hall v. Mullanphy Planing Mill*, 16 Mo. App. 454."

It will be observed that all of the authorities cited by appellant in support of his position were cases wherein it was held the original contractor had by the express terms of his contract with the owner precluded himself from and waived the right to file a lien in his own behalf.

The case now presented does not, however, in our opinion, require the determination by us of this controverted question, although it has been argued at length and with ability, by counsel for both parties. We therefore express no opinion upon it.

Waiver of a personal legal right, speaking generally, is a personal privilege; and, in order to constitute it, the privilege must be personally exercised. It may arise from express contract, or by acts of omission or commission, which would

be wholly inconsistent with the assertion of the right alleged to have been waived. When it is claimed to have arisen under a contract, it is essentially a question of intention, and this intention of the parties must be arrived at by the application of the usual and settled rules of construction of contracts. Where in proceedings under mechanic's lien statutes the question concerns only the right of the contractor to assert a lien, an alleged prohibitory clause in his contract must be construed strictly; and, if the language used be of doubtful import, should be construed in his favor; in other words, the prohibition must be clearly expressed. This rule applies with additional and far greater force when the general contractor's agreement is invoked to cut off the lien rights of subcontractors, laborers and material men who were not parties to it. This doctrine accords with reason and with the manifest demands of right and justice. It is maintained by all the authorities, as well by those which claim that the prohibition of liens in a contract between the owner and the general contractor will deprive subcontractors and other employees of the right to file liens, as by those who assert the contrary doctrine. *Jarvis v. State Bank, supra; Nice v. Walker,* 153 Pa. St. 123; Boisot on Mechanics' Liens, § 748; Phillips on Mechanics' Liens, § 273; 2 Jones on Liens, § 1505.

In *Nice v. Walker,* 153 Pa. St. 123, the rule in Pennsylvania is stated to be that in order that the contract should effectuate this purpose, its language "should be so plain that every mechanic and material man, though of limited education, can understand it at a glance, and not be compelled to submit its interpretation to a lawyer with the risk of a decision against him in the court of last resort."

It is also well settled by these authorities that if the contract is so worded as to be fairly subject to a different construction, it is a sufficient reason why it should not be held to bar the right of subcontractors, laborers and material men to file liens.

Applying these general rules to the contract here in question, we find in the first place that it does not undertake in

any sense to prohibit Elrod & Burnett, the general contractors, from themselves filing a lien. The broadest construction which might be given to it is that they will not permit any person claiming to be a subcontractor, laborer or material man under them to set up or assert a lien. Under this agreement, they would unquestionably have had the right to file a lien. *Young v. Lyman*, 9 Pa. St. 449; *Mulrey v. Barrow*, 11 Allen, 152; 2 Jones on Liens, §1500.

This omission in the contract of itself would seem to make the Pennsylvania authorities inapplicable, it having been said in *Schroeder v. Galland*, *supra*, a leading case, that " the only ground upon which the contractor can bind the building for either materials or labor is by virtue of the authority delegated to him by the owner, and where no such authority is delegated, but on the contrary is expressly withheld, and he covenants that no liens shall be filed against the building, he cannot file a lien himself nor can his subcontractor do so."

This is upon the theory running through all these cases that " the stream cannot run higher than its source," and that his subcontractor or other employee can have no greater rights than those granted to the contractor. In *Bowen v. Aubrey*, *supra*, the court said, " Aubrey," the principal contractor, " having thus waived his right to a lien, his subcontractor cannot claim any such right." It would seem that upon this principle the subcontractors and employees should have equal rights at least with the contractor in the enforcement of their claims, and that, in any event, where the contractor reserves to himself the right to avail himself of the statutory lien, he should not be permitted to deprive the subcontractors and employees of the same statutory right, by a contract with the owner to which they were not parties.

Again, the language of the covenant does not confine itself to liens exclusively, but it attempts to provide that the contractors shall not permit even any " claims " for work, labor or material to be pleaded, set up or asserted by any person under them. It is needless to say that if this language is to

be construed as it is attempted to be construed with reference to liens—and they must stand or fall together—the parties were undertaking to do something which there can be no pretense they had any power to do. The evident intention was that the contractor should prevent the assertion and setting up of "claims" by subcontractors and others, by paying or otherwise satisfying them.

Again, the concluding part of the same sentence contemplates the setting up and assertion of liens, because it is provided that if any such are set up, the contractors would cause the same to be satisfied and canceled of record. If this language had been omitted, there might be some basis for the contention that the parties intended to prohibit the filing of all liens: its insertion, however, is a clear recognition of the right of these parties to avail themselves of the statutes and to file liens. It brings the contract, we think, directly within the principle announced in *Jarvis v. Bank, supra.*

It is manifest to us that the only reasonable construction to be placed upon the language of this covenant is that the owner intended to compel the contractor only to protect him from any liens or right of liens. As still further confirmatory of this, another stipulation in the contract was that fifteen per cent of the contract price should be withheld by the owner, to be applied in the liquidation of any damages suffered by him, and in securing a release from any liens or right of liens.

There are several cases in Pennsylvania in which the provisions of the contract were similar in purport of language and in principle to that involved here, and it was there held that the subcontractor was not deprived of his right to a lien. *Cresswell Iron Works v. O'Brien,* 156 Pa. St. 172; *Lucas v. O'Brien,* 159 Pa. St. 536; *Schmid v. Improvement Co.,* 162 Pa. St. 214.

The contract of the original contractor in this case did not, therefore, bar subcontractors, material men and laborers from their statutory rights to a lien.

The alleged covenant against liens in the agreement be-

tween plaintiffs, as subcontractors, and the general contractors being in precisely the same language as that in the agreement which we have been discussing, the same conclusion must be reached,—the plaintiffs were not barred by it from filing a lien. The same conclusion must also be reached with reference to the rights of defendant Keefe, who was a guarantor or surety on this bond; if the principals did not waive their lien rights, neither did the surety. The bond clause, like that of the general contractor, in its nature and effect was simply one to protect or indemnify the general contractors against liens. Whether it inured to the benefit of the owner, and, if so, to the extent that he might set up and plead it in defense of this action, it is not necessary to discuss. Conceding, but not deciding, that he might do so, he could certainly not in a court of equity avail himself of it unless he set up and showed specifically that he had suffered some damage by reason of the violation of the condition of the bond. And this he would be required to do also to avail himself of a plea in estoppel. This he has not done. On the contrary, the only inference to be drawn from his own pleadings is that he was not damaged. The building was completed on December 9th, and all of the lien statements involved were filed, and he received notice thereof, within thirty days thereafter. He alleges that, relying upon this covenant in these contracts as relieving him wholly from any liability for liens, he paid to the general contractors all that was due to them under the contract, before this suit was commenced. He does not say that he paid it before these liens were initiated, and before he received any notice thereof. According to his own contract, he was to withhold fifteen per cent of the entire contract price until after the completion of the building, so as to cover any damages which he might suffer, and also, if necessary, to secure releases from liens. The statute then in force required the owner to withhold this percentage of the contract price for at least thirty-five days after the completion of the contract. Laws, 1893, sec. 2, p. 316.

Contracts are subject to the statutes of the jurisdiction in which they are entered into and are to be executed. Such statutes, so far as they may be applicable, enter into and form a part of the contract. In this case, the statute to which we have referred is directly applicable, and no question being raised as to its validity, and there being nothing in the contract inconsistent with it or indicating an intention to waive it, the presumption arises in law and in fact that the parties intended the provisions of their contract in this respect to be in accord with and subject to this statutory requirement. Therefore it must be conclusively presumed that he had in his possession, unpaid, this percentage of the contract price at the time when all of these liens were initiated, and when he received actual notice of them. He cannot be heard to complain then in a court of equity, because this fifteen per cent of the contract price which he is conclusively presumed to have withheld, and which was due and owing to the contractor, was more than sufficient to have paid off and discharged all the liens in controversy.

For these reasons, we conclude that there was no error in the proceedings of the trial court; decree was in accordance with law, was right, and should be affirmed. It is therefore so ordered.

*Affirmed.*