[L. A. No. 1790. In Bank.—August 19, 1907.]

# REBECCA W. MOORE, Respondent, v. WILL D. GOULD et al., Appellants.

MORTGAGE—PRESUMPTION OF CONSIDERATION — EVIDENCE — FINDING.—A presumption of a consideration for a note and mortgage arises from the writing itself. Such presumption is itself evidence which is sufficient to support a finding of consideration, notwithstanding evidence of the mortgagors to the contrary.

ID.—RENEWAL OF NOTE AND MORTGAGE—ACKNOWLEDGMENT OF DEBT—ATTORNEY IN FACT.—An instrument in writing, executed by the authorized attorney in fact of the maker of a promissory note and mortgage, securing the same, certifying and declaring that such mortgage, "together with the promissory note and debt secured thereby [which were particularly described], is hereby renewed and extended for the further term of two years from date," constitutes a renewal of the note and mortgage within the meaning of section 2922 of the Civil Code. Such instrument is also an acknowledgment of the debt, and in either aspect it operated to start a new period of limitation thereon.

ID.—GENERAL POWER OF ATTORNEY—AUTHORITY TO RENEW NOTE AND MORTGAGE.—A general power of attorney, in the form in common use in this state, authorizing the attorney to do certain specifically enumerated acts, which included almost every conceivable mode of dealing with real and personal, tangible and intangible property, "and to make, do and transact all and every kind of business of what nature and kind soever, and also . . . to sign, seal, execute, deliver and acknowledge such deeds, covenants, indentures, agreements, mortgages, hypothecations, bottomries, charter parties, bills of lading, bills, bonds, notes, receipts, evidences of debt, releases and satisfaction of mortgage, judgment and other debts, and such other instruments in writing of whatever kind and nature as may be necessary or proper in the premises," is sufficient to authorize the attorney, on behalf of his principal, to execute a renewal of a note and mortgage made by the principal.

ID.—RENEWAL BY PAYEE AFTER TRANSFER.—The original payee of a note and mortgage, after he has made a transfer thereof, is not debarred as the attorney in fact of the maker from executing a renewal of the note and mortgage on behalf of the maker, although the effect of such renewal might result in his release as indorser or guarantor.

ID.—RENEWAL DOES NOT BIND MERE AGENT.—A renewal of a promissory note and mortgage made by the duly authorized attorney in fact of the maker, and solely in his capacity as agent, only binds the principal, and not the agent.

ID.—RECITAL IN MORTGAGE OF EXTENSION OF NOTE.—A recital in a mortgage that the time of payment of a note secured thereby has been extended to a certain day beyond the date specified in the note for its maturity is as between the parties to the mortgage conclusively presumed to be true; and in promising to pay such note "according to its terms and conditions," the mortgagor must be taken to have referred to the terms and conditions, not merely as they appeared on the face of the note itself, but with such modifications as were recited in the mortgage.

ID.—DEFENSE OF PAYMENT—STRIKING OUT COUNTERCLAIM.—In an action to foreclose a mortgage in which the answer affirmatively alleged payment of the mortgaged indebtedness in full, it is without prejudice to the defendants to strike out counterclaims setting up part payments on such indebtedness.

ID.—CROSS-DEMANDS BETWEEN MORTGAGOR AND MORTGAGEE—SIMPLE CONTRACT DEBT.—A simple contract debt due from a mortgagee to the mortgagor is not such a cross-demand, within the meaning of section 440 of the Code of Civil Procedure, as to have it operate as a compensation *pro tanto* of the mortgage indebtedness. Such indebtednesses cannot be mutually compensated under that section.

ID.—COUNTERCLAIMS—STATUTE OF LIMITATIONS—CLAIM AGAINST ESTATE—STRIKING OUT PLEADINGS.—In an action to foreclose a mortgage it is not prejudicial error to strike out cross-demands against the estate of a deceased person which were pleaded as counterclaims, but which were ineffectual as such because they were barred by the statute of limitations and had not been presented to the personal representative of the deceased.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Frank F. Oster, Judge presiding.

The facts are stated in the opinion of the court.

James H. Blanchard, William E. Cox, and Will D. Gould, for Appellants.

Miller & Page, for Respondent.

SLOSS, J.—This is an action on two promissory notes, secured by two mortgages of real estate and by a pledge of stock of a corporation. Plaintiff had judgment of foreclosure, and the defendants, Will D. Gould, Mary L. Gould, Samuel Peterson, and James H. Blanchard, appeal from the judgment and from an order denying their motion for a new trial.

On July 18, 1892, the defendant Peterson executed to the defendant Will D. Gould a note for seven hundred dollars, payable on or before one year after date, and at the same time executed and delivered to said Gould a mortgage of certain real property in the county of Los Angeles to secure the said note. On the twenty-eighth day of September, 1892, Will D. Gould assigned and transferred the said note and mortgage to plaintiff, and at the same time indorsed the note to the order of plaintiff.

On June 28, 1897, the defendants Will D. Gould and Mary L. Gould, his wife, made, executed, and delivered to the order of P. R. Moore, the husband of plaintiff, a promissory note in the sum of five hundred and fifty dollars, payable on or before July 18, 1899. Together with their note, they executed and delivered to said P. R. Moore and to plaintiff, as mortgagees, a mortgage of certain real property in Los Angeles County, which mortgage stated that it was made as security for the payment of the Peterson note of seven hundred dollars, as well as the five-hundred-and-fifty-dollar note. In said mortgage the mortgagors furthermore promised to pay the seven-hundred-dollar note according to the terms and conditions thereof. The mortgagee, P. R. Moore, died, and the five-hundred-and-fifty-dollar note and the mortgage executed contemporaneously with it passed to the plaintiff by virtue of the decree of distribution in his estate. Other facts will be stated in connection with the various points made by appellants.

1. The answers of the appellants allege that there was no consideration for the second note and mortgage, and that said note and mortgage had been executed upon the agreement with the mortgagee, P. R. Moore, that the sum of five hundred and fifty dollars should be applied and credited as a partial payment on the seven-hundred-dollar note and mortgage. The court found against these allegations.

The defendants Will D. Gould and Mary L. Gould gave testimony that there had been an agreement, as averred in the answers, between them and P. R. Moore. This testimony was not directly denied, as indeed it could not be, the other active party to the transaction, P. R. Moore, being dead. But the claim of these defendants had in itself inherent elements of improbability. The theory that the second note and mortgage were given to reduce the amount due upon the first note is

not readily reconcilable with the form of the mortgage itself, which declares that it is given to secure both notes, and that the mortgagors undertake to pay both.

As to the plea of want of consideration, a presumption of consideration arises from the writing itself. Such presumption is itself evidence. (Code Civ. Proc., sec. 2061, subd. 2.) There is thus raised a conflict, which is sufficient to support the finding of the court. (*People* v. *Milner,* 122 Cal. 171, [54 Pac. 833]; *Sarraille* v. *Calmon,* 142 Cal. 651, [76 Pac. 497]; *Adams* v. *Hopkins,* 144 Cal. 19, 36, [77 Pac. 712].)

2. The statute of limitations (Code Civ. Proc., sec. 337) is set up as a defense to both notes. The finding of the court is against this plea.

The five-hundred-and-fifty-dollar note was payable July 18, 1899. The complaint was filed February 27, 1903, less than four years after the maturity of the note. As to this note, therefore, it is plain that the bar of the statute had not attached.

As to the seven-hundred-dollar note, which by its terms fell due July 18, 1893, the complaint alleges, and the court found, that on the twenty-eighth day of June, 1897, the defendant Peterson and the defendant Will D. Gould, in writing, extended the time of maturity and payment until the twenty-eighth day of June, 1899, and that on the twenty-fifth day of May, 1900, the said defendants similarly extended the time of payment of said note until the eighteenth day of July, 1902.

It appears that on July 18, 1892, the defendant Peterson had executed a power of attorney to Will D. Gould. On June 28, 1897, Gould, acting as attorney in fact of Peterson, executed an instrument in writing reading as follows: ''Know all men by these presents: That Samuel Peterson being desirous of extending the loan and in consideration of the same being extended, does hereby certify and declare that a certain mortgage together with the promissory note and debt secured thereby bearing date the 18th day of July, 1892, [describing the mortgage first set out in the complaint] is hereby renewed and extended for the further term of two (2) years from this date, provided that this agreement shall not affect or impair any other covenant or condition in said promissory note or mortgage contained, but that they shall remain in as full force and effect as if this agreement had not been made.

In witness whereof, the said Samuel Peterson by Will D. Gould his attorney-in-fact has hereunto set his hand and seal this 28th day of June, in the year of our Lord one thousand eight hundred and ninety-seven.

"SAMUEL PETERSON      (Seal)

"By Will D. Gould, his attorney in fact."

On May 25, 1900, Gould, as attorney in fact, executed a similar instrument, purporting to renew and extend the note and mortgage to the eighteenth day of July, 1902.

Each of these instruments constituted a renewal of the note and mortgage within section 2922 of the Civil Code. (*German S. and L. Soc.* v. *Hutchinson,* 68 Cal. 52, [8 Pac. 627]; *London etc. Bank* v. *Bandmann,* 120 Cal. 220, 224, [65 Am. St. Rep. 179, 52 Pac. 583]; *Seaton* v. *Fiske,* 128 Cal. 549, [61 Pac. 666].) Furthermore, each of them contained an acknowledgment of the debt, and thus operated to start a new period of limitation. (Code Civ. Proc., sec. 360; *Concannon* v. *Smith,* 134 Cal. 14, [66 Pac. 40]; *Dearborn* v. *Grand Lodge,* 138 Cal. 658, [72 Pac. 154].) In either aspect these writings were sufficient to take the case out of the operation of the statute of limitations so far as the defendant Peterson is concerned, if Gould was authorized to execute them as Peterson's agent and in his behalf. Whether or not he was so authorized depends upon a consideration of the terms of the power of attorney. This instrument was in the form in common use in this state, and usually described as that of a "general power of attorney." It authorized Gould, in the name of Peterson, and for his use and benefit, to perform any of a great variety of acts set forth in the instrument. These acts include almost every conceivable mode of dealing with real and personal, tangible and intangible property, and their enumeration is followed by these words: "and to make, do and transact all and every kind of business of what nature and kind soever, and also for me and in my name, and as my act and deed, to sign, seal, execute, deliver and acknowledge such deeds, covenants, indentures, agreements, mortgages, hypothecations, bottomries, charter parties, bills of lading, bills, bonds, notes, receipts, evidences of debt, releases and satisfaction of mortgage, judgment and other debts, and such other instruments in writing of whatever

kind and nature as may be necessary or proper in the premises." This power authorized the execution by Gould of the two instruments in question. The purpose and effect of a power of attorney of this kind are to vest in the attorney full authority to transact any and all kinds of business for the principal. Every phrase in it defining the authority of the attorney is in broad and unrestricted terms, and such terms are to be given an interpretation in harmony with the scope and purpose of the instrument read as a whole. It is true that where a power is given for a limited or specific purpose general words following the declaration of the particular purpose are to be limited to such acts as may be necessary to accomplish such particular purpose. (*Washburn* v. *Alden,* 5 Cal. 463; *Billings* v. *Morrow,* 7 Cal. 171, [68 Am. Dec. 235]; 1 Am. & Eng. Ency. of Law, 2d ed., p. 1000.) But this rule has no application to such an instrument as the one now under consideration. Nowhere in this power of attorney is there any language limiting the scope of the business which may be performed by the attorney, and the generality of the terms employed clearly includes authority to execute the instruments of renewal. *Ward* v. *Kentucky Bank,* 7 T. B. Mon. 93, cited by appellants, is not in point. The power of attorney there considered was closely limited in its terms. Furthermore, the act of the agent was not similar to that of Gould in this case.

It is urged that Gould, by reason of his position as payee of the seven-hundred-dollar note, could not act as Peterson's agent to renew the note. This position would have much force if Gould at the time of executing the instruments of renewal or "extension" (as they are termed in the record) had still been the holder of the note and mortgage. (*Wolford* v. *Cook,* 71 Minn. 77, [70 Am. St. Rep. 315, 73 N. W. 706].) His disability in such case would have rested on the rule that one who acts in a fiduciary capacity cannot be permitted to deal with himself in his individual capacity. (*Davis* v. *Rock Creek Co.,* 55 Cal. 359, [36 Am. Rep. 40]; *Sterling* v. *Smith,* 97 Cal. 343, [32 Pac. 320].) The interest of his principal would have been adverse to his own. Here, however, Gould had already transferred the note and mortgage. Acting for Peterson, he was dealing not with himself, but with the plaintiff. Even if the renewal might have resulted in his release

as indorser or guarantor, such release could have operated only to the disadvantage of plaintiff, not to that of Peterson. Peterson's liability as maker was primary, that of Gould merely secondary. Peterson was at all times bound to pay the note, and was not entitled to recourse against Gould, who was liable only to subsequent holders. (Civ. Code, sec. 3116.)

The action was therefore commenced in time as against the defendant Peterson, and this without regard to the allegation and finding of his absence from the state (Code Civ. Proc., sec. 351) for periods sufficient to prevent the statute of limitations from running in his favor.

Whether the action on the seven-hundred-dollar liability was barred as to the defendants Will D. and Mary L. Gould depends on different considerations. The two instruments executed by Gould as attorney in fact for Peterson could have no effect as against any person other than Peterson. In executing them Gould was assuming to act not in his individual capacity, but only as agent for Peterson. Since the acts were lawful, and within the scope of his authority, the principal only, and not the agent, was bound by them. (Civ. Code, sec. 2343.) The evidence therefore did not support the finding that Gould extended the maturity of the seven-hundred-dollar note.

But the mortgage of June 28, 1897, in which the Goulds undertook to pay both notes, contains the following provisions. It declares that the mortgagors mortgage certain real property as security for the payment of the two notes, which are set out in full. Following the copy of the seven-hundred-dollar note signed by Peterson, the mortgage reads as follows: "Said last note of $700 is secured by mortgage . . .; and time of payment of said note has been extended to July 18th, 1899. And the mortgagors promise to pay said notes according to the terms and conditions thereof. . . ." Here is a direct promise to pay the note, following a recital that the time of payment has been extended to July 18, 1899. This recital is, as between the parties to the mortgage, conclusively presumed to be true. (Code Civ. Proc., sec. 1962, subd. 2.) In promising to pay the note, "according to its terms and conditions," the mortgagors must be taken to have referred to the terms and conditions, not merely as they appeared on the face of the note itself, but with such modifications as had

been recited. To hold otherwise would require us to construe their promise as an agreement to perform an impossibility,— i. e. to pay money at a date already past. If the promise to pay was not intended to be a promise to pay at the date to which payment had, as recited, been extended, it is difficult to see why the recital of extension should have been inserted at all. Construing the language as importing a promise to pay the seven-hundred-dollar note on July 18, 1899, the action, commenced on February 17, 1903, was not barred by section 337 of the Code of Civil Procedure. Under this view, the finding of an extension by Gould becomes immaterial.

3. The answer of the Goulds and Blanchard set up eight separate "cross-demands and counterclaims." At the trial the plaintiff moved to strike them out, and the court granted the motion as to all but one. This ruling is assigned as error.

Two of the counterclaims stricken out set up payments on account of the indebtedness sued on. Whether or not such matter was properly denominated a counterclaim, the plea of payment was undoubtedly one that the defendants had a right to make. But the order striking out was not prejudicial to the appellants, since the answer had, in another place, affirmatively alleged payment in full.

The remaining counterclaims alleged indebtedness from P. R. Moore to the defendant Will D. Gould for services rendered by the latter as an attorney at law in various matters not connected with this litigation, and for hay and other personal property delivered by said Gould to P. R. Moore. It appeared upon the face of said counterclaims that each of the causes of action therein set forth would, if made the basis of an independent action, have been barred by the statute of limitations. The grounds of the motion to strike out were that said claims were so barred, and that they had not been presented for allowance to the personal representative of P. R. Moore, deceased, in the course of the proceedings for the settlement of his estate. Either ground afforded sufficient reason for the granting of the motion, unless these counterclaims are to be treated as partial payments of the mortgage debt, compensating it *pro tanto*, under the provisions of section 440 of the Code of Civil Procedure. That section provides that "When cross-demands have existed between persons under such circumstances that, if one had brought an action

against the other, a counterclaim could have been set up, the two demands shall be deemed compensated, so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."

Is this a case of cross-demands which may be mutually compensated under this section? We think not. The plaintiff was suing on an indebtedness secured by mortgage, an indebtedness which could be recovered only by means of the action of foreclosure prescribed by section 726 of the Code of Civil Procedure. In such action the mortgaged premises must first be applied to the satisfaction of the debt, and there is no personal liability on the part of the mortgagor unless the security shall prove insufficient to satisfy the debt. The land is made primarily liable for the payment of the obligation, and the mortgagor can be called on to pay only where the proceeds of a sale of the land are insufficient. (*Bartlett* v. *Cottle,* 63 Cal. 366; *Biddel* v. *Brizzolara,* 64 Cal. 354, [30 Pac. 609]; *Crisman* v. *Lanterman,* 149 Cal. 647, [87 Pac. 89].) For this reason it has been held that in an action upon a simple contract debt (a bank deposit) the defendant cannot set off against such debt a liability of the plaintiff secured by mortgage. (*McKean* v. *German-American Sav. Bank,* 118 Cal. 334, [50 Pac. 656].) The two claims, said the court, could not be deemed compensated under section 440, because "the action of respondent for the deposit, and the right of action of appellant to foreclose its mortgage, are not cross-demands as contemplated by that section." In that case the action was brought by the holder of the unsecured indebtedness, and the defendant sought to set up a debt secured by mortgage. Here the plaintiff sues on the mortgage, while the defendant relies on a simple debt as a cross-demand. But this difference does not make the principle of the McKean case any less applicable here. If the demands at their inception were of such a nature that they were compensated, such compensation affected both parties alike. The rights of the parties under section 440 are necessarily mutual. One claim could not be compensated without the other being compensated to the same extent. If the existence of the mortgage debt in favor of plaintiff was not available to reduce the amount of Gould's claims, his claims had no greater effect in discharging the mortgage debt.

The alleged cross-demands not being such as could be pleaded as an extinguishment of plaintiff's claim under section 440, they can be supported, if at all, only as counterclaims under subdivision 2 of section 438. As such, they failed to state a ground of counterclaim, because—1. They were barred by the statute of limitations (*Lyon* v. *Petty*, 65 Cal. 325, [4 Pac. 103]); and 2. They had not been presented to the executor or administrator of P. R. Moore's estate. (Code Civ. Proc., sec. 1500.)

While it might have been better practice to demur to these pleadings, there was therefore no prejudicial error in the order striking them out or in the refusal of the court to receive evidence in their support.

The foregoing discussion deals with all the points presented and argued by appellants in their brief.

The judgment and order appealed from are affirmed.

Shaw, J., Henshaw, J., McFarland, J., and Angellotti, J., concurred.

BEATTY, C. J., and LORIGAN, J., dissenting.—We dissent from the judgment and from that part of the opinion of the court which holds that cross-demands of a mortgagor against the mortgagee are not within the protection of section 440 of the Code of Civil Procedure.